## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**EDWARD J. NAZAR in his capacity as**
**Chapter 7 Bankruptcy Trustee for**
**Betty Parks, et al.,**

        **Plaintiffs,**

        **v.**                              **Case No.  07-2025-JWL**

**WOLPOFF & ABRAMSON, LLP,**

        **Defendant.**
_____

### MEMORANDUM AND ORDER

This lawsuit arises from the debt collection practices of the law firm of Wolpoff & Abramson, LLP. Plaintiffs are three Chapter 7 bankruptcy trustees for three different debtors who had credit card accounts with MBNA America Bank, NA which were the subject of collection efforts by the defendant law firm. Plaintiffs filed this lawsuit in state court alleging that defendant Wolpoff & Abramson committed numerous specified deceptive and unconscionable acts pertaining to the solicitation, maintenance, and enforcement of consumer credit agreements. Defendant removed the lawsuit to this court. This matter is currently before the court on Defendant's Motion to Compel Arbitration and to Dismiss or Stay

Proceedings (doc. #5). For the reasons explained below, this motion is granted.[1] The court will stay the judicial proceedings in this case pending completion of the arbitration process.

## BACKGROUND

When each of the credit card accounts underlying the current dispute was established, MBNA issued to plaintiffs written terms and conditions governing their accounts. Plaintiffs concede that those written terms and conditions contain valid and binding arbitration provisions. Plaintiffs argue that those arbitration provisions are not enforceable by defendant Wolpoff & Abramson because, plaintiffs contend, Wolpoff & Abramson does not fall within the scope of their arbitration agreements with MBNA. Plaintiffs point out that the credit agreements specifically exclude arbitration of the claims brought by them against third-party debt collectors in the absence of MBNA being named as a codefendant, and they contend that defendant Wolpoff & Abramson is a third-party debt collector. In response to this argument, defendant Wolpoff & Abramson contends that it falls within the scope of the arbitration provision because it is an agent of MBNA, not a third-party debt collector.

---

[1] The court also grants defendant's motion to strike plaintiffs' surreply (doc. #15). There is no provision in this court's local rules for the filing of surreplies, and leave to file a surreply was neither sought nor granted here. Thus, the court will not address the issues raised in plaintiffs' surreply. The court notes, however, that even if the court were to consider the contents of plaintiffs' surreply it would not change the court's conclusion that the arbitrator must decide the threshold issue of arbitrability. Thus, the court would grant defendant's motion to compel arbitration in any event.

2

The distinction is a significant one under the terms of the credit agreements because they require arbitration of "[a]ny claim or dispute . . . by either you or **us** against the other" (emphasis added) and, furthermore, they each contain a provision which defines "us" as follows:[2]

> For the purposes of this Arbitration [and Litigation] Section, "we" and **<u>"us" means MBNA America Bank, N.A.</u>,** its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, [and] any purchaser of your account, **<u>and all of their</u>** officers, directors, employees, **<u>agents</u>**, and assigns or any and all of them. ***Additionally, "we" or "us" shall mean any third party*** providing benefits, services, or products in connection with the account (***including*** but not limited to credit bureaus, merchants that accept any credit device issued under the account, reward[s] or enrollment services, credit insurance companies, ***debt collectors***[,] and all of their officers, directors, employees and agents) ***if, and only if, such a third party is named by you as a co[-]defendant in any Claim you assert against us.***

(Emphasis added.)  Defendant, then, is attempting to invoke the bold-faced underlined language set forth above by arguing that it is MBNA's agent, whereas plaintiffs are attempting to invoke the bold-faced italicized language set forth above by arguing that defendant is a third-party debt collector and that defendant therefore does not fall within the definition of "us" in this case because MBNA is not named as a co-defendant.

In resolving this dispute, defendant has raised the threshold issue of who—this court or the arbitrator—should decide this issue.  Defendant contends that the arbitration provisions contain another clause in which the parties agreed to reserve the issue of

---

[2] The differences in this provision among the six different credit agreements are set forth in brackets.  This bracketed language does not dictate a different result with respect to any one or more of the agreements vis-a-vis the others.

3

arbitrability to the arbitrator.  Specifically, the arbitration provisions in the credit agreements

contain the following language:[3]

> Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents[,] or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties, or declaratory or equitable relief), **including Claims regarding the applicability of this Arbitration [and Litigation] section** or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. ["Claim" shall have the broadest meaning possible.]

(Emphasis added.)  Defendant asks the court to enforce the emphasized language above and

compel arbitration of the parties' dispute concerning whether defendant falls within the scope

of the parties subject to the arbitration provision.


## DISCUSSION

One of the central tenets of federal arbitration law is that "'arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed to so submit.'"  *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT&T*

*Techs. v. Communication Workers of Am.*, 475 U.S. 643, 648 (1986)).  "'Just as the

arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate that

dispute, so the question "who has the primary power to decide arbitrability" turns upon what

the parties agreed about *that* matter.'"  *Spahr*, 330 F.3d at 1270 (emphasis in original;

---

[3] Again, the differences in this provision among the six different credit agreements are set forth in brackets.  This bracketed language does not dictate a different result with respect to any one or more of the agreements vis-a-vis the others.

4

quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).  The threshold issue of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is presumptively an issue to be decided by the court unless the parties have clearly and unmistakably provided otherwise.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (quotation and citation omitted)); *Spahr*, 330 F.3d at 1269.  To determine whether the parties agreed to submit the question of arbitrability to the arbitrator, the court refers to "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.

In a diversity action such as this one, the court applies the substantive laws and the choice-of-law rules of the forum state, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941); *Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), which in this case is Kansas.  As to contract-based claims, Kansas choice-of-law rules honor an effective choice of law by contracting parties.  *Pepsi-Cola Bottling Co.*, 431 F.3d at 1255 (enforcing choice of law provision and applying New York law to contract claims); *O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1194 (10th Cir. 2004) (same, applying Delaware law); *Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 540, 44 P.3d 364, 375 (2002) ("Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement.").  In this case, each of the six credit agreements

containing the arbitration clauses state that they are "governed by the laws of the State of Delaware . . . and by any applicable federal laws." As stated previously, the applicable federal law directs the court to refer to ordinary state-law principles in deciding whether the parties clearly and unmistakably agreed to submit the question of arbitrability to the arbitrator. *First Options*, 514 U.S. at 944. The court will therefore apply Delaware law in interpreting the scope of the arbitration provision.

Under Delaware law, a contract must be construed as a whole to give effect to the parties' intentions. *DVC Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005). Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning. *Lorillard Tobacco Co. v. American Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). The court considers extrinsic evidence only if there is an ambiguity in the contract. *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (1996). Language is ambiguous only if it is reasonably susceptible of different interpretations. *Lorillard Tobacco Co.*, 903 A.2d at 739. Where no ambiguity exists, the contract must be interpreted according to the ordinary and usual meaning of its terms. *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).

In this case, the ordinary and usual meaning of the language contained in the arbitration provisions is unambiguous in that it clearly and unmistakably evidences an intent for the arbitrator to decide the threshold issue of whether defendant Wolpoff & Abramson falls within the scope of the arbitration provisions. The arbitration provisions specifically require "[a]ny claim or dispute ("Claim") . . . arising from or relating in any way to this

6

Agreement . . . including Claims [again, which is defined to include any claim or dispute] regarding the applicability of" the arbitration provision to "be resolved by binding arbitration." This language does not just broadly require any claim or dispute relating to the parties' credit agreement to be submitted to arbitration. More specifically, it requires any dispute regarding application of the arbitration provision itself to be submitted to arbitration. The parties' dispute at this procedural juncture is whether the arbitration provision applies to the claims brought in this lawsuit by plaintiffs against defendant Wolpoff & Abramson. This is a dispute regarding the applicability of the arbitration provision which, under the plain language of the parties' agreement, must be resolved by binding arbitration.

If that language were not plain enough, the court also notes that each of the credit agreements states that the arbitration shall be conducted by the National Arbitration Forum under the Code of Procedure in effect at the time the claim is filed. This Code of Procedure gives the arbitrator "the power to rule on all issues . . . and objections regarding the . . . scope . . . of the arbitration agreement including all objections relating to . . . enforceability of the arbitration agreement." National Arbitration Forum, Code of Procedure, Rule 20(F), at 18 (May 1, 2006), *available at* http://www.arb-forum.com/main.aspx?itemID=609&hideBar= False&navID=162&news=3. The Courts of Appeals have held that where the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (referring to a provision requiring arbitration to be conducted in accordance with the

Commercial Arbitration Rules of the American Arbitration Association (the "AAA"), which rules contain a similar provision giving the arbitrator the power to rule on objections regarding the existence, scope, or validity of the arbitration agreement); *see also Terminix Int'l Co. v. Palmer Ranch*, 432 F.3d 1327, 1331 (11th Cir. 2005) (same, citing *Contec Corp.*); *cf. P & P Indus. v. Sutter Corp.*, 179 F.3d 861, 867-68 (10th Cir. 1999) (noting that when a party incorporates the AAA rules by reference, it is bound by all of the procedural rules of the AAA). Because the credit agreements at issue in this case explicitly incorporate procedural rules that empower the arbitrator to decide the threshold issue of arbitrability, the court views this as yet additional clear and unmistakable evidence that the parties intended to delegate to the arbitrator the issue of whether defendant Wolpoff & Abramson falls within the scope of the arbitration provision.

The court recognizes the potentially anomalous result that the court is compelling arbitration at the behest of defendant Wolpoff & Abramson, a non-signatory to the arbitration provision, who, the arbitrator ultimately may determine, is not entitled to enforce the arbitration provision. The Second Circuit was confronted with a similar situation in *Contec Corp.*, 398 F.3d at 205. In that case, the arbitration agreement was originally entered into between Contec, L.P. and Hango Electronics. Hango Electronics subsequently changed its name to Remote Solution. Contec L.P. was converted to Contec LLC, then merged with Contec Corporation, leaving Contec Corporation as the surviving entity. Remote Solution filed suit against Contec Corporation and Contec Corporation sought to compel arbitration. Remote Solution contended that Contec Corporation was not a signatory to the agreement

and was therefore barred from seeking to enforce it.  In response, Contec Corporation argued that the arbitral forum, not the court, was the proper forum for determining whether a valid arbitration agreement existed between itself and Remote Solution.  The Second Circuit reasoned that the agreement bound its signatory Remote Solution to arbitrate any disputes with the other signatory, namely Contec L.P., but that the agreement included a prohibition on assignment and an exclusion of third-party rights.  The Second Circuit explained that just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory.  *Id.* at 209.  "In order to decide whether arbitration or arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement."  *Id.* The court concluded that a sufficient relationship between Contec Corporation and Remote Solution existed in that case to compel arbitration "even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because Contec Corporation cannot claim rights under the [a]greement."  *Id.*  The court concluded that "as a signatory to a contract containing an arbitration clause and incorporating by reference AAA Rules, Remote Solution cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability."  *Id.* at 211 (emphasis in original).

Likewise, here, plaintiffs are signatories to contracts containing arbitration clauses which (1) expressly state that the applicability of the arbitration provision is to be resolved by arbitration and (2) incorporate the procedural rules of the National Arbitration Forum which give the arbitrator power to rule on objections regarding the scope and enforceability

of the arbitration agreement.  This is not a case in which some random, unrelated non-signatory is seeking to enforce the agreement.  There is a genuine dispute concerning whether defendant Wolpoff & Abramson is entitled to enforce the agreement in its capacity as an agent of MBNA.  If defendant Wolpoff & Abramson was acting as such an agent, then defendant would be included within the contractual definition of the term "us," and the arbitration provision would apply to this lawsuit because it involves a "claim . . . by either you or **us** against the other."  Thus, there is a sufficient relationship between defendant Wolpoff & Abramson and plaintiffs and the rights created under the credit agreement. Plaintiffs are not entitled to disavow their agreed-to obligation to arbitrate the dispute as to whether defendant Wolpoff & Abramson is entitled to enforce the arbitration provision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings (doc. #5) is granted.  The parties are directed to proceed to arbitration.  The court will stay the judicial proceedings in this case pending completion of the arbitration process.  Counsel for the parties are directed to report to the court in writing no later than July 20, 2007, concerning the status of that arbitration in the event that it has not been terminated earlier.  Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Strike Plaintiffs' Surreply (doc. #15) is granted.

10

**IT IS SO ORDERED** this 15th day of February, 2007.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge